NO. COA13-1382

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.                                    New Hanover County
                                      No. 12CRS003101
STEPHEN ANTHONY GRANGER,
     Defendant.


Appeal by Defendant from judgments entered 22 August 2013 by Judge William R. Pittman in New Hanover County Superior Court. Heard in the Court of Appeals on 24 April 2014.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Kerri L. Sigler, for Defendant-appellant.*

DILLON, Judge.


Stephen Anthony Granger ("Defendant") appeals from the judgment entered for driving while impaired following the denial of his motion to suppress. For the foregoing reasons, we affirm the trial court's order denying Defendant's motion to suppress.

I. Background

In the early morning hours of 1 May 2012, Defendant was involved in a motor vehicle accident in Wilmington where the vehicle he was operating rear-ended another vehicle. As a

result of the accident, he was charged with driving while impaired ("DWI") and failure to reduce speed.

On 25 June 2013, Defendant filed in the superior court[1] a motion to suppress the results from the test of his blood which was drawn shortly after the accident, arguing *inter alia* that his Sixth Amendment right to confront witnesses had been violated by the State's failure to prove the chain of custody of his blood sample. On 22 July 2013, Defendant filed a motion to dismiss, arguing that his Fourth Amendment rights had been violated because the blood draw was performed without a warrant.

On 21 August 2013, Defendant's motions were argued before the trial court. Evidence presented by the State tended to show the following: On 1 May 2012, Officer Eric Lippert with the Wilmington Police Department responded to a report of an accident occurring around 2:19 a.m. When he arrived at the scene, Officer Lippert observed Defendant sitting in the driver's seat alone in his vehicle and Defendant's vehicle had rear-ended a truck towing an enclosed trailer. Officer Lippert approached Defendant's vehicle and noticed that Defendant was "in some level of pain, discomfort[,]" and had "a moderate odor

---

[1] This matter was originally brought in district court where Defendant was convicted of DWI. Defendant appealed that conviction to superior court.

of an alcoholic beverage coming from his person." Defendant was subsequently transported to New Hanover Regional Medical Center by EMS, without Officer Lippert performing any sobriety checks on Defendant.

Officer Lippert also traveled to the hospital where he spoke with Defendant. During this encounter, Officer Lippert noticed that Defendant had "bloodshot and glassy eyes[,]" and Defendant kept interrupting him and telling him that "I've been drinking[.]" Defendant admitted to Officer Lippert that he had taken "three shots" between 10 p.m. and 11 p.m. and his last shot was 20 minutes before the accident or approximately 2 a.m. While Defendant was lying in his hospital bed, Officer Lippert gave Defendant two Alcosensor portable breath tests, one at 3:04 a.m. and the other at 3:09 a.m.; both tests were positive for alcohol. Because of Defendant's condition, Officer Lippert was limited in the type of field sobriety tests he could perform. He administered the horizontal gaze nystagmus test, which Defendant did not pass. He also administered an alphabet test and a counting test, which Defendant passed.

Based on his investigation, Officer Lippert determined that he had sufficient probable cause to obtain a blood sample from Defendant. At 3:10 a.m., Officer Lippert read Defendant his

implied consent rights and waited for a nurse to draw Defendant's blood for analysis. At 3:50 a.m., a nurse became available, and Officer Lippert made a request to Defendant for a blood draw; however, Defendant refused to give his consent. Officer Lippert testified that he did not get a warrant for the blood draw because, *inter alia*, he was by himself with Defendant and would have to get another officer to watch Defendant while he drove to the county jail to get the warrant, about 20 minutes away; he was concerned about the dissipation of the alcohol from Defendant's blood stream, as it had been over an hour since the accident; and he had to get the blood evidence soon as he could not get an accurate blood sample if Defendant were given any medications for his pain or injuries. At 3:51 a.m., Officer Lippert instructed the nurse to draw Defendant's blood. A test of this blood sampled revealed an alcohol concentration of 0.15, in excess of the legal limit.

Following testimony, Defendant argued that there was insufficient exigent circumstances to justify the warrantless seizure of the blood evidence. The superior court ruled in open court that Defendant's Fourth Amendment rights had not been violated because there was sufficient exigent circumstances

present, but stated specifically that it was not ruling on the Sixth Amendment "chain of custody" issue.

On 22 August 2013, the superior court issued a written order, with findings of fact and conclusions of law, denying "defendant's motion to suppress" after concluding that there were sufficient exigent circumstances to justify the warrantless blood draw. On the same day, after preserving his right to appeal the superior court's denial of his motion to suppress, Defendant pled guilty to DWI. As a condition of the plea, the State dismissed the charge of failure to reduce speed. The superior court sentenced Defendant to a term of 12 months imprisonment; this sentence was suspended and Defendant was placed on supervised probation for 18 months. The Court also ordered Defendant to complete 48 hours of community service and "not to drive until licensed to do so." On 22 August 2013, Defendant filed written notice of appeal from this judgment.

## II. Argument

In his only issue on appeal, Defendant contends that the trial court erred in denying his motion to suppress certain blood evidence because there were insufficient exigent circumstances to support the warrantless seizure of that evidence in violation of his Fourth Amendment rights.

## A. Preliminary Manner

The State, citing *State v. Golden*, 96 N.C. App. 249, 385 S.E.2d 346 (1989), argues that Defendant waived his right to argue a violation of his Fourth Amendment rights. Specifically, the State contends that none of Defendant's attempts in superior court to challenge the admission of the blood test based on Fourth Amendment grounds followed N.C. Gen. Stat. § 15A-977(a) (2012), which requires, in part, that (1) the "motion to suppress . . . be in writing[,]" (2) it "state the grounds upon which it is made[,]" and (3) it "be accompanied with an affidavit containing facts supporting the motion." *Id.* We disagree.

Specifically, the State argues that Defendant's oral motion to suppress made at the hearing based on the Fourth Amendment was not sufficient to preserve Defendant's appeal since this motion did not meet the requirement that it be "in writing." Further, the State argues that Defendant's written motion to suppress was not sufficient to preserve Defendant's appeal, since the only ground stated in that motion is based on the Sixth Amendment (chain of custody/confrontation of witnesses) and *not* the Fourth Amendment (exigent circumstances). Finally, the State argues that Defendant's written motion to dismiss was

not sufficient to preserve Defendant's appeal because – though that motion stated the Fourth Amendment as the ground for the challenge - it was not accompanied by the required "affidavit containing facts supporting the motion." *See id.*

We believe that Defendant did satisfy the requirements of N.C. Gen. Stat. § 15A-977(a). Specifically, as the State concedes, Defendant's motion to dismiss – which is based on Fourth Amendment grounds - may be treated as a motion to suppress, pursuant to our decision in *Golden*, *supra*. We recognize that, though the motion to dismiss sets forth factual allegations to support the motion, the motion was unverified. However, Defendant's motion to suppress based on his Sixth Amendment challenge was verified[2] and contains substantially the same factual allegations that are contained in Defendant's unverified motion to dismiss. Since the factual allegations in the motion to suppress are verified and since these allegations are sufficient to support Defendant's motion to dismiss, Defendant has satisfied the minimum requirements for a motion to suppress pursuant to N.C. Gen. Stat. § 15A-977(a). Accordingly,

---

[2] Although not initially included in the record on appeal, Defendant made a motion with this Court to amend the record on appeal to include the verification of his motion to suppress. We grant this motion.

we turn to address Defendant's substantive arguments regarding the denial of his motion to suppress and exigent circumstances.

B. Motion to Suppress-Exigent Circumstances

1. Standard of Review

This Court's review of an appeal from the denial of a defendant's motion to suppress is limited to determining "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011). When a defendant fails to challenge the trial court's findings of fact,

> they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*Id.* at 168, 712 S.E.2d at 878 (citations and quotation marks omitted). On appeal, Defendant challenges only portions of finding of fact 41. Therefore, the remaining findings of fact are binding to us on appeal and deemed to be supported by competent evidence. *See id.* We first turn to Defendant's challenges to the trial court's finding of fact 41, arguing that

subsections (a) and (c) of this finding are not supported by competent evidence in the record.

2. The trial court's finding of fact 41

Finding of fact 41(a) states

> (a) The first exigent circumstance was the fact that defendant's percentage alcohol [sic] in the his [sic] blood was dissipating and had been for approximately 1 hour and 32 minutes, from the time of the accident until the time the defendant refused a consensual blood draw. Such dissipation destroys the vital evidence in the case. An additional 40 plus minute delay by traveling to the New Hanover County Jail to seek a magistrate's signature on a search warrant would allow further dissipation of alcohol and further evidence to be destroyed.

First, Defendant contends that it was not 1 hour and 32 minutes from the accident until he refused a consensual blood draw, as the trial court found, but 1 hour and 32 minutes from the accident until when his blood was actually drawn. Defendant also argues that Officer Lippert arrived at 2:50 a.m. and "wasted" 20 minutes performing field sobriety tests on Defendant and then "wasted" another 40 minutes between Defendant's refusal and the blood draw, enough time for him to obtain the search warrant and he "simply refused to do so." We find Defendant's arguments unpersuasive.

It appears that Defendant is challenging the first and last sentences of this finding. As to the first sentence, Officer Lippert testified that the accident occurred at 2:19 a.m. Officer Lippert further testified that at 3:50 a.m., when a nurse finally became available to perform a blood draw, Defendant refused to give his consent to the draw. One minute later, the nurse drew Defendant's blood at 3:51 a.m. We do not believe that Officer Lippert "waste[d]" 40 minutes, as Defendant argues, from 3:10 until 3:50 a.m., but he was waiting for a nurse. Therefore, this finding is supported by competent evidence in the record. Defendant's argument may be based on the implied consent rights form which shows 3:10 a.m. as the time that Defendant refused, but Officer Lippert clarified in his testimony that he gave the form to Defendant at 3:10 a.m. but it was not until a nurse arrived at 3:50 a.m. that Defendant refused to give his consent.

As to the last sentence in this finding, Officer Lippert testified that it would have taken 15 or 20 minutes to drive to the county jail to see a magistrate and get a warrant and it would take him some amount of time to fill out the proper search warrant form and did not know how long the process would take.

Therefore, the trial court's finding that there would have been a "40 plus minute delay" is supported by competent evidence.

We also find Defendant's argument that Officer Lippert "wasted" 20 minutes doing field sobriety tests unpersuasive because it is well understood that Officer Lippert would have to have probable cause in order to obtain the contested blood draw evidence. *See* U.S. Const. Amend. IV. Those sobriety tests would be in furtherance of establishing probable cause. Therefore, Defendant's arguments are overruled.

As to finding of fact 41(c), Defendant contends Officer Lippert's testimony regarding Defendant needing pain medication was "purely hypothetical," and there was no evidence that Defendant needed or was given any pain medication that would interfere with him getting a blood sample. We likewise find these arguments to be without merit.

Officer Lippert testified that when he arrived on the scene of the accident Defendant appeared to be "in some level of pain [and] discomfort[]," he was taken out of his vehicle and transported to the hospital on a backboard, and, at the hospital, Defendant complained of foot, ankle, knee, and shoulder pain. Officer Lippert testified that he had seen accident victims receive pain medication before and was

concerned that pain medication would prevent him from getting an accurate blood test. He further stated that he would not stop or interfere with a person's medical treatment. We are not persuaded by Defendant's argument that no evidence supports finding of fact 41(c) and that Officer Lippert's concerns were merely "hypothetical[.]" Rather, there was competent evidence in the record to support the trial court's finding of fact 41(c) and Defendant's arguments are overruled. We next turn to Defendant's challenges to the trial court's conclusions of law.

### 3. The trial court's conclusions of law

Defendant contends that the trial court's findings of fact do not support its conclusion of law that sufficient exigent circumstances existed to justify the warrantless collection of his blood sample. Defendant contends that the trial court's findings of fact do not show that Officer Lippert "faced an emergency that justified action without a warrant" as required by *Missouri v. McNeely,* ___ U.S. ___, 185 L. Ed. 2d 696 (2013), for sufficient exigent circumstances. Defendant concludes that the denial of his motion to suppress should be reversed, the evidence suppressed, and his charges dismissed.

Our Supreme Court has stated that "[t]he withdrawal of a blood sample from a person is a search subject to fourth

amendment protection." *State v. Welch*, 316 N.C. 578, 585, 342 S.E.2d 789, 793 (1986) (citation omitted). Therefore, "a search warrant must be procured before a suspect may be required to submit to such a procedure unless probable cause and exigent circumstances exist that would justify a warrantless search." *Id.* Defendant raises no argument regarding probable cause for the warrantless blood draw. Thusly, our review is limited to whether there were sufficient exigent circumstances.

The United States Supreme Court recently held in *Missouri v. McNeely*, *supra*, that the natural dissipation of alcohol in the bloodstream, standing alone, cannot create an exigency in a case of alleged impaired driving sufficient to justify conducting a blood test without a warrant. The inquiry into an exigency is fact-specific and "demands that we evaluate each case of alleged exigency based 'on its own facts and circumstances.'" *McNeely*, ___ U.S. at ___, 185 L. Ed. 2d at 705 (citation omitted). It stated that in DWI-type investigations, "where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at ___, 185 L. Ed. 2d at 707. By way of example, the Court stated that there may be "a situation in which the

warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer." *Id.* at ___, 185 L. Ed. 2d at 708. But the Court also recognized that "some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* at ___, 185 L. Ed. 2d at 707. The Court stated that, for example, "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* at ___, 185 L. Ed. 2d at 709. The Court, in affirming the lower court's ruling, concluded that

> [i]n short, while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, . . . it does not do so categorically. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.

*Id.*

In *State v. Dahlquist*, ___ N.C. App. ___, 750 S.E.2d 580 (2013), *appeal dismissed and disc. review denied*, ___ N.C. ___, ___ S.E.2d ___, 2014 N.C. LEXIS 203 (N.C., 2014), we addressed

the effect of the U.S. Supreme Court's holding in *McNeely*, *supra*, stating that "the question for this Court remains whether, considering the totality of the circumstances, the facts of this case gave rise to an exigency sufficient to justify a warrantless search." *Id.* at ___, 750 S.E.2d at 583.

In the present case, we conclude that the trial court's findings support its conclusion that the *totality of the circumstances* showed that exigent circumstances justified the warrantless blood draw. Specifically, the trial court found that Officer Lippert had concerns regarding the dissipation of alcohol from Defendant's blood, as it had been over an hour since the accident when Officer Lippert established sufficient probable cause to make his request for Defendant's blood. Those findings also state Officer Lippert's concerns "due to delays from the warrant application process[.]" *See McNeely*, ___ U.S. at ___, 185 L. Ed. 2d at 709. Its findings show that Officer Lippert did not have the opportunity to investigate the matter adequately until he arrived at the hospital because of Defendant's injuries and need for medical care. Even if he had the opportunity to investigate the matter at the accident scene sufficiently to establish probable cause, unlike the example in *McNeely*, ___ U.S. at ___, 185 L. Ed. 2d at 708, Officer Lippert

was investigating the matter by himself and would have had to call and wait for another officer to arrive before he could travel to the magistrate to obtain a search warrant. Its findings show that Officer Lippert's "knowledge of the approximate probable wait time" and "time needed to travel[,]" as being over a 40 minute round trip to the magistrate at the county jail. *See Dahlquist*, ___ N.C. App. at ___, 750 S.E.2d at 583 (holding that there were sufficient exigent circumstances justifying the warrantless blood draw in part because of the officer's knowledge of the travel time and delays as a result of the warrant application process). Additionally, Officer Lippert had the added concern of the administration of pain medication to Defendant. Defendant had been in an accident severe enough that he was placed on a backboard for transportation to the hospital and complained of pain in several parts of his body. There was a reasonable chance if Officer Lippert left him unattended to get a search warrant or waited any longer for the blood draw, Defendant would have been administered pain medication by hospital staff as part of his treatment, contaminating his blood sample.[3]

---

[3] We note that a defendant can be guilty of impaired driving under N.C. Gen. Stat. § 20-138.1 not only for having "consumed sufficient alcohol" but also for being "under the influence of

For the foregoing reasons, we affirm the trial court's denial of Defendant's motion to suppress.

AFFIRMED

Judge STROUD and Judge HUNTER, JR. concur.

---

an impairing substance" or with "any amount of a Schedule I controlled substance, as listed in G.S. 90-89, or its metabolites in his blood or urine." A blood test for Defendant's blood alcohol content could also presumably reveal if he was also under the influence of another "impairing substance" or "Schedule I controlled substance[.]"