STATE OF NORTH CAROLINA v. MARK ANTHONY FLETCHER

No. COA09-926

(Filed 19 January 2010)

### 1. Motor Vehicles— driving while impaired—findings of fact supported

In a driving while impaired case, the trial court's findings of fact made after a hearing on defendant's motion to suppress blood test results were supported by competent evidence. The findings of fact supported the trial court's denial of defendant's motion to suppress.

---

## 2. Motor Vehicles— driving while impaired—non-consensual blood draw—constitutional

N.C.G.S. § 20-139.1(d1), which allows a non-consensual blood draw for analysis of its blood alcohol content in the absence of a search warrant where an officer has probable cause and a reasonable belief that a delay in testing would result in dissipation of the person's blood alcohol content, is constitutional on its face and as applied in this case.

Appeal by defendant from judgment entered 4 February 2009 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 9 December 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathryne E. Hathcock, for the State.*

*Leslie C. Rawls, for defendant-appellant.*

JACKSON, Judge.

Mark Anthony Fletcher ("defendant") appeals the 4 February 2009 oral order denying his motion to suppress blood test results. For the reasons stated below, we affirm.

On the evening of 1 June 2008, Officer Carrie Powers of the Pinehurst Police Department ("Officer Powers") and three other officers were operating a checkpoint on Highway 5. The blue lights on all four police vehicles were flashing. Officer Powers noticed defendant's Cadillac as it approached the checkpoint because the car did not slow down. She then stepped to the side of the road and motioned for the car to stop. Defendant was driving the car and was the only occupant of the car. After he rolled down the window, defendant would neither look at Officer Powers nor answer her questions. He would not give her his driver's license, and Officer Powers could not understand what he said because he was "mumbling." She also noticed "a strong cologne odor in the car[.]" Based upon these circumstances, Officer Powers asked defendant to step out of the car. She recognized a "strong" odor of alcohol on defendant's breath and began to conduct several field sobriety tests. The first test indicated that defendant had been drinking. Defendant did not perform either of the following two tests according to Officer Powers's instructions. Officer Powers then administered a portable breathalyzer and arrested defendant for driving while impaired ("DWI"). She transported defendant to the police station where she could administer the Intoximeter.

Once at the police station, Officer Powers read defendant his rights with respect to the Intoximeter at 1:05 A.M., and defendant waived those rights. Officer Powers then waited more than the required fifteen minutes before beginning the test. Defendant made six separate attempts to blow into the machine for the requisite amount of time but never provided a valid sample. Defendant was marked as a refusal at 1:44 A.M. Officer Powers then transported defendant to Moore Regional Hospital ("the hospital") in order to compel a blood test. Following a drive of two to three minutes and no more than a five-minute wait at the hospital, defendant's blood was drawn. The results of that test showed a 0.10-gram alcohol concentration in defendant's blood.

On 14 July 2008, defendant was indicted for habitual impaired driving, based upon the 1 June 2008 incident in addition to three previous DWI convictions on 26 April 2000, 11 July 2001, and 18 September 2003. On 3 February 2009, defendant moved to suppress the results of the blood test. During a hearing on the motion on 4 February 2009, Officer Powers testified as to the circumstances surrounding the arrest and her belief as to the low probability of quickly obtaining a search warrant prior to the blood test. The trial court issued oral findings of fact and conclusions of law, denying defendant's motion. Defendant then pled guilty but reserved his right to appeal the denial of his motion to suppress. Defendant now appeals.

**[1]** Defendant's first three arguments center on whether two of the trial court's findings of fact are supported by competent evidence, and if not, whether his motion to suppress the blood test results should have been granted. Because we hold that the findings of fact are supported by competent evidence, we disagree with defendant's assertion that his motion to suppress should have been granted.

This Court reviews a trial court's denial of a motion to suppress by determining whether its findings of fact are supported by competent evidence and whether those findings support the trial court's conclusion of law. *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations and internal quotation marks omitted).

Defendant first contends that the trial court did not have competent evidence before it to support the finding of fact "that she [Officer

Powers] reasonably believed that such a delay under those circumstances would result in the dissipation of the percentage of alcohol in the defendant's blood." We disagree.

North Carolina General Statutes, section 20-139.1(d1) provides,

> If a person refuses to submit to any test or tests pursuant to this section, any law enforcement officer with probable cause may, without a court order, compel the person to provide blood or urine samples for analysis if the officer reasonably believes that the delay necessary to obtain a court order, under the circumstances, would result in the dissipation of the percentage of alcohol in the person's blood or urine.

N.C. Gen. Stat. § 20-139.1(d1) (2007). A reasonable belief generally must be " 'based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing' " the point at issue. *State v. Edwards*, 164 N.C. App. 130, 137, 595 S.E.2d 213, 218, *disc. rev. denied*, 358 N.C. 735, 603 S.E.2d 879 (2004) (quoting *Michigan v. Long*, 463 U.S. 1032, 1049, 77 L. Ed. 2d 1201, 1220 (1983)) (internal quotation marks omitted).

In this case, defendant does not question whether he had refused to submit to a test or whether probable cause existed in order to compel a blood test. Therefore, the only issue is whether Officer Powers's belief was reasonable under the circumstances. Defendant contends that Officer Powers's belief—that the delay caused by obtaining a court order would result in the dissipation of defendant's percentage of blood alcohol—was unreasonable and "not grounded in fact or knowledge[.]" However, competent evidence exists to suggest that her belief was reasonable. Officer Powers testified that the magistrate's office in Carthage was twelve miles away. She also testified that she had been to the magistrate's office on approximately twenty to thirty occasions late on Saturday night or early Sunday morning. She testified that the weekends are often "very busy" at the magistrate's office and that, of the twenty to thirty weekend nights she had traveled there, she had had to stand in line "[s]everal of those times." Officer Powers further testified that she frequently had been to the emergency room at the hospital on weekend nights and that "most of the time" it was busy then. Based upon her four years' experience as a police officer, Officer Powers opined that the entire process of driving to the magistrate's office, standing in line, filling out the required forms, returning to the hospital, and having defendant's blood drawn

would have taken "anywhere from two to three hours[.]" Although other evidence exists that could have supported a contrary finding, we hold that the trial court's finding of fact as to Officer Powers's reasonable belief is supported by competent evidence.

Defendant also argues that the trial court's finding of fact—"that exigent circumstances did exist allowing the officer to compel the defendant to provide a blood sample without a . . . search warrant"— is not supported by competent evidence. We disagree.

"The withdrawal of a blood sample from a person is a search subject to protection by article I, section 20 of our constitution." *State v. Carter,* 322 N.C. 709, 714, 370 S.E.2d 553, 556 (1988) (citing *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908 (1966); *State v. Welch,* 316 N.C. 578, 342 S.E.2d 789 (1986)). Therefore, "a search warrant must be issued before a blood sample can be obtained, unless probable cause and exigent circumstances exist that would justify a warrantless search." *Id.* (citing *State v. Welch,* 316 N.C. 578, 342 S.E.2d 789 (1986)). This Court has recognized that "alcohol and other drugs are eliminated from the blood stream in a constant rate, creating an exigency with regard to obtaining samples . . . ." *State v. Davis,* 142 N.C. App. 81, 86–87, 542 S.E.2d 236, 239 (2001) (citing *Schmerber v. California,* 384 U.S. 757, 770, 16 L. Ed. 2d 908, 920 (1966)).

Here, defendant had failed multiple field sobriety tests and was unsuccessful at producing a valid breath sample using the Intoximeter at the police station. Officer Powers testified as to the distance between the police station and the magistrate's office, her belief that the magistrate's office would be busy late on a Saturday night, and her previous experience with both the magistrate's office and the hospital on weekend nights. Considering our caselaw that recognizes the exigency surrounding obtaining a blood sample when blood alcohol level is at issue, *Davis, supra,* and the evidence of a probability of significant delay if a warrant were obtained, we hold that the trial court had before it competent evidence to support its finding that exigent circumstances existed.

Because defendant's third argument is premised upon the trial court's lack of competent evidence to support its findings of fact, and because we hold that the trial court's findings of fact are supported by competent evidence, we reject defendant's third argument that the trial court erred by denying his motion to suppress the results of the blood test.

[2] Fourth, defendant contends that the trial court erred in denying his motion to suppress, because without consent, exigent circumstances, a search warrant, or probable cause, the blood draw violated defendant's rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article I of the North Carolina Constitution. As his final argument, defendant challenges the constitutionality of North Carolina General Statutes, section 20-139.1. We disagree with both of these contentions and will address them together, as did defendant.

The United States Constitution provides, "The right of the people to be secure in their persons, . . . against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. am. IV. It further protects "any person" from governmental deprivation "of life, liberty, or property, without due process of law[.]" U.S. Const. am. XIV § 1. Our North Carolina Constitution also guards these rights, as reflected by its law of the land clause and prohibition against general warrants. N.C. Const. art. I §§ 19, 20. *See also State v. Bryant*, 359 N.C. 554, 563, 614 S.E.2d 479, 485 (2005) ("[T]he Law of the Land Clause of the North Carolina Constitution, N.C. Const. art. I, § 19, is synonymous with due process of law as found in the Fourteenth Amendment to the Federal Constitution.") (internal quotation marks and citations omitted) and *State v. Grooms*, 353 N.C. 50, 73, 540 S.E.2d 713, 727–28 (2000) (recognizing the similarity between the Fourth Amendment of the United States Constitution and the general warrants clause of the North Carolina Constitution).

Our Supreme Court previously has examined the constitutionality of warrantless blood draws. *See, e.g., Carter*, 322 N.C. at 714, 370 S.E.2d at 556 (noting that, so long as probable cause and exigent circumstances are present, a warrantless blood draw is justified); *State v. Welch*, 316 N.C. 578, 342 S.E.2d 789 (1986) (noting that the Fourth Amendment prohibits only unreasonable searches and that probable cause and exigent circumstances would justify a warrantless blood draw). The United States Supreme Court also has determined that, while blood tests clearly fall within the purview of the Fourth Amendment, probable cause and the "destruction of evidence" caused by the body's diminution of alcohol in the bloodstream together meet the Fourth Amendment's requirements for a reasonable—in this case warrantless—search of the person. *Schmerber v. California*, 384 U.S. 757, 767–71, 16 L. Ed. 2d 908, 917–20 (1966).

In order to proceed with a non-consensual blood test in the absence of a search warrant, North Carolina General Statutes, section

20-139.1(d1) requires both probable cause and an officer's reasonable belief that a delay in testing would result in dissipation of the person's blood alcohol content. N.C. Gen. Stat. § 20-139.1(d1) (2007). In effect, our legislature has codified what constitutes exigent circumstances with respect to DWI's. In the case *sub judice*, defendant argues that our previous caselaw concerning the exigency of testing for blood alcohol content is outdated. Defendant bases this assertion upon our courts' widespread acceptance of retrograde extrapolation methodology, which allows experts to determine from a blood test one's previous blood alcohol content. *See, e.g., State v. Cook*, 362 N.C. 285, 661 S.E.2d 874 (2008) and *State v. Teate*, 180 N.C. App. 601, 638 S.E.2d 29 (2006). However, defendant does not present us with any caselaw that calls into question that the diminution of blood alcohol content constitutes an exigent circumstance. We decline now to question the body of precedent that recognizes the exigency of ascertaining one's blood alcohol content, especially considering that only our Supreme Court has the authority to interpret our Constitution with finality. *See State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984) (citing *White v. Pate*, 308 N.C. 759, 304 S.E.2d 199 (1983)). Pursuant to our caselaw, we hold that North Carolina General Statutes, section 20-139.1(d1) is constitutional.

For the reasons stated herein, we hold that competent evidence supports the findings of fact that Officer Powers reasonably believed that a delay would result in the dissipation of the alcohol in defendant's blood and that exigent circumstances existed that allowed a warrantless blood draw. We also hold that the trial court did not err in denying defendant's motion to suppress. Finally, North Carolina General Statutes, section 20-139.1 is not unconstitutional on its face nor in its application to this case.

Affirmed.

Judges HUNTER, Robert C. and BRYANT concur.