**STATE v. DAHLQUIST**

[231 N.C. App. 100 (2013)]

STATE OF NORTH CAROLINA
v.
KEVIN JAMES DAHLQUIST

No. COA13-276

Filed 3 December 2013

**Search and Seizure—driving while impaired—compelled blood sample—no warrant—exigent circumstances**

The trial court did not err in a driving while impaired case by improperly denying defendant's motion to suppress evidence from a blood sample taken without a search warrant or defendant's consent. Under the totality of the circumstances, the facts of this case gave rise to an exigency sufficient to justify a warrantless search.

Appeal by Defendant from judgment entered 29 February 2012 by Judge Jerry Cash Martin in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 September 2013.

*Attorney General Roy A. Cooper, by Assistant Attorney General Tamara Zmuda, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for Defendant.*

DILLON, Judge.

Kevin James Dahlquist ("Defendant") appeals from a judgment convicting him of driving while impaired, arguing the trial court improperly denied his motion to suppress evidence from a compelled blood sample. We affirm.

I. Facts and Procedural History

In the early morning hours of Saturday, 26 September 2009, Officer Charles Jamieson of the Charlotte-Mecklenburg Police Department was working a checkpoint for impaired driving. The checkpoint was equipped with a Blood Alcohol Testing ("BAT") mobile, which housed an intoxilyzer for determining a suspect's blood alcohol level. The BAT mobile also had an area for a magistrate, though no magistrate was present that night.

At approximately 1:45 A.M., Defendant drove up to the checkpoint. Upon smelling a strong odor of alcohol emanating from Defendant,

Officer Jamieson administered several field sobriety tests, which Defendant failed. Defendant admitted to Officer Jamieson that he had consumed alcohol that night. Officer Jamieson arrested Defendant and escorted him to the BAT mobile to administer a breath test. Defendant refused to submit to the test. Officer Jamieson then transported Defendant to Mercy Hospital, where blood samples were drawn from Defendant without his consent. Afterwards, Defendant was taken to the Mecklenburg County Intake Center and appeared before a magistrate.

Defendant filed a pretrial motion to suppress evidence obtained without a search warrant. On 12 January 2012, Superior Court Judge Larry G. Ford denied Defendant's motion to suppress. On 29 February 2012, a jury found Defendant guilty of driving while impaired. From this judgment, Defendant appeals.

## II. Anaylsis

In Defendant's sole argument on appeal, he contends the trial court erred in denying his motion to suppress the evidence from the compelled blood samples without first obtaining a search warrant, in violation of the U.S. Constitution, amendment IV and the N.C. Constitution, Article I, Section 20. Specifically, Defendant claims no exigent circumstances existed to allow the warrantless search. We find no error.

"Ordinarily, the scope of appellate review of an order [regarding a motion to suppress] is strictly limited to determining whether the trial [court]'s underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [court]'s ultimate conclusions of law." *State v. Salinas*, 366 N.C. 119, 123, 729 S.E.2d 63, 66 (2012) (citation and quotation marks omitted) (alteration in original). When considering a motion to suppress, the trial judge "must set forth in the record his findings of fact and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2011). These findings and conclusions must be in the form of a written order *unless* "(1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Royster*, __ N.C. App. __, __, 737 S.E.2d 400, 403 (2012).

In the present case, we note that there were no material conflicts in the evidence. Accordingly, the trial court announced its findings of fact and explained the rationale for its decision, in open court. Defendant does not contend the trial court's findings are not supported by competent evidence. Rather, Defendant argues, citing *Missouri v. McNeely*,

__ U.S. __, 185 L. Ed. 2d 696 (2013), that the compelled taking of a blood sample in this case – without a search warrant or Defendant's consent, and allegedly without sufficient exigent circumstances – violated his constitutional right to be free from unreasonable searches and seizures.

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. The United States Supreme Court has held that a warrantless search of the person is reasonable only if it falls within a recognized exception. *Missouri v. McNeely*, __ U.S. __, __, 185 L. Ed. 2d 696, 704 (2013). "One well-recognized exception . . . applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (citation and quotation marks omitted). For instance, "[i]n some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id.* at __, 185 L. Ed. 2d at 705. (citations omitted). "[A] warrantless search is [in certain situations] potentially reasonable because there is compelling need for official action and no time to secure a warrant." *Id.* (citation and quotation marks omitted). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, this Court looks to the totality of circumstances." *Id.* (citations omitted).

We have held that "[t]he withdrawal of a blood sample from a person is a search subject to protection by article I, section 20 of our constitution." *State v. Fletcher*, 202 N.C. App. 107, 111, 688 S.E.2d 94, 96 (2010) (citation and quotation marks omitted). "Therefore, a search warrant must be issued before a blood sample can be obtained, unless probable cause and exigent circumstances exist that would justify a warrantless search." *Id.* at 111, 688 S.E.2d at 97 (citation and quotation marks omitted). This rule is also codified at N.C. Gen. Stat. § 20-139.1(d1) (2011), which provides the following:

> If a person refuses to submit to any test or tests pursuant to this section, any law enforcement officer with probable cause may, without a court order, compel the person to provide blood or urine samples for analysis if the officer reasonably believes that the delay necessary to obtain a court order, under the circumstances, would result in the dissipation of the percentage of alcohol in the person's blood or urine.

*Id.*

STATE v. DAHLQUIST

[231 N.C. App. 100 (2013)]

While it is "recognized that alcohol and other drugs are eliminated from the blood stream in a constant rate, creating an exigency with regard to obtaining samples," *Fletcher*, 202 N.C. App. at 111, 688 S.E.2d at 97 (citation and quotation marks omitted), the United States Supreme Court recently held, in *Missouri v. McNeely, supra*, that the natural dissipation of alcohol in the bloodstream cannot, *standing alone*, create an exigency in a case of alleged impaired driving sufficient to justify conducting a blood test without a warrant. *Id.* Specifically, the Supreme Court concluded that "the natural metabolization of alcohol in the bloodstream" does not create a "a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases," holding that the "exigency in this context must be determined case by case based on the totality of the circumstances." *Id.* at __, 185 L. Ed. 2d at 702. Therefore, after the Supreme Court's decision in *McNeely*, the question for this Court remains whether, considering the totality of the circumstances, the facts of this case gave rise to an exigency sufficient to justify a warrantless search.

In this case, the trial court found, *inter alia*, the following: Defendant pulled up to a checkpoint. A police officer noticed the odor of alcohol. Defendant admitted to drinking five beers. The officer administered field sobriety tests, and Defendant's performance in the tests signified impairment. Defendant was then taken to the BAT Mobile; however, Defendant refused the intoxilyzer test. The officer then took Defendant directly to Mercy Hospital to have a blood sample taken without first obtaining a warrant from a magistrate at the jail's Intake Center. The officer made this decision to go directly to the hospital because he knew that over time the amount of alcohol in blood dissipates; he knew from his years of experience that Mercy Hospital was ten to fifteen minutes away and that its patient load on Saturday mornings was typically fairly light; he surmised from his past experience that getting a blood draw at Mercy Hospital would take approximately forty-five minutes to one hour; he surmised from his past experience that, on a weekend night, it would take between four and five hours to obtain a blood sample if he first had to travel to the Intake Center at the jail to obtain a search warrant.[1]

Based on its findings, the trial court concluded that the police officer had exigent circumstances before him so as to allow Defendant's blood to be drawn without first obtaining a search warrant and that the officer had a reasonable belief that the delay to obtain the search warrant under

---

1. This recitation is not an exhaustive recount of the trial court's findings but is merely a summary.

the circumstances would result in dissipation of the percentage of alcohol in Defendant's blood.

After reviewing the trial court's findings of fact and the evidence presented at the hearing on Defendant's motion to suppress, we believe the evidence supports the trial court's findings and conclusions regarding the existence of exigent circumstances in this particular case. Considering the totality of the circumstances – including, but not limited to, the distance from and time needed to travel to the Intake Center and the hospital, and the officer's knowledge of the approximate probable wait time at each place – we conclude the facts of this case gave rise to an exigency sufficient to justify a warrantless search. Accordingly, we find no error.

We would, however, elaborate on one point regarding the procedure of obtaining warrants from magistrates in cases such as this, which was addressed by the United Supreme Court in McNeely – advances in technology. The Supreme Court noted that "[t]he Federal Rules of Criminal Procedure were amended in 1977 to permit federal magistrate judges to issue a warrant based on sworn testimony communicated by telephone[:] . . . As amended, the law now allows a federal magistrate judge to consider 'information communicated by telephone or other reliable electronic means.' " McNeely, __ U.S. at __, 185 L. Ed. 2d at 708 (quoting Fed. Rule Crim. Proc. 4.1, which provides that "[a] magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a warrant or summons"). The McNeely Court also recognized that "[s]tates have also innovated[:] Well over a majority of States allow police officers or prosecutors to apply for search warrants remotely through various means, including telephonic or radio communication, electronic communication such as e-mail, and video conferencing." Id., __ U.S. at __, 185 L. Ed. 2d at 708. Indeed, in North Carolina, pursuant to N.C. Gen. Stat. § 15A-245(a)(3) (2011), a "sworn law enforcement officer" may employ "audio and video transmission in which both parties can see and hear each other" to obtain a search warrant. Id.

Though the North Carolina rules of criminal procedure have allowed a search warrant to be issued based on information communicated by a "video transmission" since 2005, the record in this case does not indicate that the arresting officer attempted to videoconference with the magistrate to obtain a search warrant or that he had the technology to do so.[2]

2. We further note that N.C. Gen. Stat. § 15A-245(a)(3) provides that "[p]rior to the use of audio and video transmission pursuant to this subdivision, the procedures and the type

**STATE v. DAHLQUIST**

[231 N.C. App. 100 (2013)]

N.C. Gen. Stat. § 15A-245(a)(3). Rather, it appears from the transcript that the arresting officer may have assumed he only had two options in this case: (1) to take Defendant to the hospital and compel a warrantless blood draw sample; or (2) to drive to the jail Intake Center, wait for a magistrate to issue a warrant, and then return to the hospital, at which time the alcohol in Defendant's blood may have dissipated. In our opinion, the "video transmission" option that has been allowed by N.C. Gen. Stat. § 15A-245(a)(3) for the past eight years is a method that should be considered by arresting officers in cases such as this where the technology is available. In the same vein, we believe the better practice in such cases might be for an arresting officer, where practical, to call the hospital and the Intake Center to obtain information regarding the wait times on that specific night, rather than relying on previous experiences. Having noted this, we also repeat the following statement of the United States Supreme Court:

> We by no means claim that telecommunications innovations have, will, or should eliminate all delay from the warrant-application process. Warrants inevitably take some time for police officers or prosecutors to complete and for magistrate judges to review. Telephonic and electronic warrants may still require officers to follow time-consuming formalities designed to create an adequate record[.] . . . And improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest. But technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency. That is particularly so in this context, where BAC evidence is lost gradually and relatively predictably.

*McNeely*, __ U.S. at __, 185 L. Ed. 2d at 709.

---

of equipment for audio and video transmission shall be submitted to the Administrative Office of the Courts by the senior resident superior court judge and the chief district court judge for a judicial district or set of districts and approved by the Administrative Office of the Courts." In the present case, Defendant does not assert that the arresting officer should have, but did not, employ the procedure allowed in N.C. Gen. Stat. § 15A-245(a). Neither the State, nor Defendant, develop any argument pertaining to this statute, nor do the parties point us to information in the record regarding whether Mecklenburg County, Judicial District 26, has even submitted the necessary information to AOC for approval.

III. Conclusion

In conclusion, we affirm the trial court's order denying Defendant's motion to suppress in this case, because, after considering a totality of the circumstances, we believe exigent circumstances existed to compel a warrantless blood draw sample from Defendant.

AFFIRMED.

Judge McGEE and Judge McCULLOUGH concur.