An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. 15-222

Filed: 20 October 2015

Wake County, No. 09CRS213782

STATE OF NORTH CAROLINA

      v.

JAMES PRESTON DAVIS, Defendant.

Appeal by Defendant from judgment entered 25 July 2014 by Judge Reuben F. Young in Wake County Superior Court. Heard in the Court of Appeals 27 August 2015.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Neil Dalton, for the State.*
>
> *Irons & Irons, PA., by Ben G. Irons II, for Defendant.*

DILLON, Judge.

James Preston Davis ("Defendant") appeals from a judgment convicting him of driving while impaired. For the following reasons, we find no error.

## I. Background

Police responded to a one-car accident on 28 December 2009 in Wake County. When they arrived, Defendant was seated in the driver's seat and appeared to be disoriented. Defendant vehemently refused to perform field sobriety tests or to give a blood sample. At his request, Defendant was transported to the hospital via

ambulance. One of the responding officers obtained a search warrant for a sample of Defendant's blood. At the hospital, this officer gave Defendant a copy of the warrant and explained its contents. Defendant again declined to give blood voluntarily. Therefore, based on Defendant's refusal to cooperate, the officer held Defendant's arm still in order to ensure his safety while a nurse took two blood samples. Also, a second officer helped restrain Defendant during the blood draw by placing his hands on Defendant's shoulders. The chemical analysis of Defendant's blood sample showed Defendant's blood alcohol content to be .29%.

Defendant was adjudicated guilty of DWI in district court and gave notice of appeal to superior court.

Prior to his superior court trial, Defendant filed a motion to suppress results of the chemical analysis of his blood sample and a motion to dismiss for speedy trial violation pursuant to N.C. Gen. Stat. § 15A-954(a)(3). Defendant also issued a subpoena to obtain access to a certain report compiled by the police department. The trial court denied both motions and quashed the subpoena of the police report.

Defendant was tried before a jury, which convicted Defendant of DWI. Defendant was sentenced to imprisonment for a term of two years. Defendant gave timely notice of appeal.

## II. Analysis

On appeal, Defendant alleges error in (1) the trial court's denial of his motion to suppress, (2) violation of his right to a speedy trial, and (3) the trial court's quashing of the subpoena.

## A. Motion to Suppress

Defendant first argues that the trial court erred in denying his motion to suppress the results of his blood test. We disagree.

The standard of review for a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law. *State v. Haislip*, 362 N.C. 499, 499, 666 S.E.2d 757, 758 (2008). The trial court's findings of fact are conclusive on appeal if supported by competent evidence. *Id.* at 500, 666 S.E.2d at 758. Conclusions of law are reviewed *de novo*. *Id.*

Defendant states correctly that the withdrawal of a blood sample from a person is a search subject to protection by *Article I, Section 7* of the North Carolina Constitution. *State v. Fletcher*, 202 N.C. App. 107, 111, 688 S.E.2d 94, 96 (2010). However, Defendant's blood was drawn pursuant to a valid search warrant. It is appropriate to require a person to submit to a blood draw when the search is authorized by a valid warrant. *See Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966).

At trial, Defendant testified that the two officers who were present during the blood draw choked him and twisted his arm behind his back immediately preceding

the blood draw, and that afterward the officers tackled him to the ground without provocation. However, in ruling on the motion to suppress, the trial court specifically found that Defendant's version of the blood draw and subsequent events was "simply not credible."

The trial court's finding of fact that an officer did not twist or wrench Defendant's arm in the process of holding his arm still for the blood draw is well supported by the competent evidence in the record. Additionally, the trial court found that after the blood draw, Defendant lunged at one of the officers causing both officers to respond by "putting him on the floor and handcuffing [him]." These findings of fact support the trial court's ultimate conclusion that Defendant's blood draw was performed pursuant to a valid search warrant which was executed in a reasonable manner. Therefore, we find no error in the trial court's dismissal of Defendant's motion to suppress.

## B. Right to a Speedy Trial

In Defendant's second argument, he asserts that his Sixth Amendment right to a speedy trial was denied due to a three-year delay in bringing his case to trial. We disagree.

Our Supreme Court has reiterated the four-factor balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 103 (1972). *See State v. Spivey*, 357 N.C. 114, 118, 579 S.E.2d 251, 254

(2003). The four factors are as follows: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right to a speedy trial, and (4) whether the defendant suffered prejudice as a result of the delay. *Id.* at 118, 579 S.E.2d at 255. None of the factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[,]" but rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. 2182, 2193). Courts must balance the factors to arrive at a conclusion. *Id.*

We apply the four factors to the present case as follows:

### 1. Length of Delay

The relevant period for this inquiry is the time after Defendant's appeal from district court until his trial in superior court. *See State v. Friend*, 219 N.C. App. 338, 343-44, 724 S.E.2d 85, 90 (2012). In this case, there was a delay of almost three years from Defendant's appeal to superior court and the final entry of judgment against him. The State conceded at the hearing on Defendant's motion to dismiss that the time elapsed was sufficient to require analysis of the remaining factors.

### 2. Reason for the Delay

The defendant has the burden of showing that the delay was the result of neglect or willfulness by the prosecution. *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255. We have held that the constitutional guarantee to a speedy trial forbids "purposeful

or oppressive delays and those which the prosecution could have avoided by reasonable effort." *State v. Washington*, 192 N.C. App. 277, 283, 665 S.E.2d 799, 804 (2008).

In this case, the record indicates that the case was continued multiple times by the prosecution. However, the trial court found that these delays were partially attributable to the "high volume of cases of criminal dockets" in Wake County and delays in receiving results of the chemical analysis of Defendant's blood. *See Washington,* 192 N.C. App. at 284, 665 S.E.2d at 804 (stating that "the record revealed that the [four and one-half-year] delay was actually the result of a 'neutral factor'-docket congestion . . ."). Additionally, Defendant concedes that there is no evidence of "serious prosecutorial misconduct." Thus, Defendant's only remaining argument concerning this factor is that his case was delayed due to prosecutorial neglect. Although Defendant's right to a speedy trial does encompass neglectful or negligent delays, these delays are weighed more neutrally than purposeful delays. *State v. Pippin*, 72 N.C. App. 387, 395, 324 S.E.2d 900, 906 (1985). At best, the delay in Defendant's trial weighs slightly in favor of Defendant's assertion that his right to a speedy trial has been violated.

### 3. Defendant's Assertion of His Right to a Speedy Trial

Regarding the third factor, the United States Supreme Court has stated:

> Whether and how a defendant asserts his right is closely related to the other factors . . . . [t]he strength of his efforts

> will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.

*Barker v. Wingo*, 407 U.S. 514, 531, 92 S. Ct. 2182, 2192 (2008).

In this case, Defendant waited almost three years from the time he gave notice of appeal to superior court before filing his motion to dismiss for speedy trial violations. This motion was the only complaint by Defendant regarding the pace of the proceedings. Defendant asserted his right only two months before his trial and only one time in the form of a motion to dismiss. *See State v. Grooms*, 353 N.C. 50, 63, 540 S.E.2d 713, 722 (2000) (holding that a "[d]efendant's failure to assert his right to a speedy trial . . . sooner in the process . . . weigh[s] against his contention that he has been denied his constitutional right to a speedy trial"). This inaction weighs against Defendant's claim of a speedy trial violation.

### 4. Prejudice to Defendant

Finally, the defendant must show actual, substantial prejudice. *Spivey*, 357 N.C. at 122, 579 S.E.2d at 257. In *Spivey*, this court recognized that the right to a speedy trial is meant to (1) prevent oppressive pretrial incarceration, (2) minimize anxiety and concern of the accused, and (3) limit the possibility that the defense will be impaired. *Id.* at 122, 579 S.E.2d at 256.

Here, Defendant argues that he has suffered prejudice because of his anxiety related to his inability to secure a job; however, throughout the majority of the period of Defendant's involvement in this case, he also had two additional driving while impaired charges pending.

Defendant also argues prejudice because critical witnesses were unavailable at the time he filed his motion to suppress. Defendant, however, has neither specifically identified these "critical witnesses" nor the content of their potential testimonies. *See State v. Goins*, ___ N.C. App. ___, ___, 754 S.E.2d 195, 199 (2014). Defendant had ample opportunity during the two years prior to his trial in superior court to seek out these witnesses and has not offered any evidence that he did so.

Weighing these factors, we hold that Defendant's right to a speedy trial has not been violated.

## C. Subpoena of Personnel File

Finally, Defendant requests that we review the trial court's decision regarding a certain police report, referred to as a "blue team report," compiled by the Raleigh Police Department. This report qualifies under N.C. Gen. Stat. § 160A-168 as a personnel record and is, therefore, privileged and protected from disclosure *unless* the trial court balances a defendant's right to access the information with the State's interest in the confidentiality of its files and determines that the information is

material to the fairness of the trial. *State v. Bailey*, 89 N.C. App. 212, 222, 365 S.E.2d 651, 657 (1988).

In this case, the trial court conducted an "in camera" review of the blue team report and denied Defendant's request for production of the report. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987). After reviewing the blue team report, we concur with the trial court's determination that the report "does not contain any exculpatory evidence or information," and therefore Defendant is not entitled to its disclosure.

NO ERROR.

Judges HUNTER, JR., and DIETZ concur.

Report per Rule 30(e).