IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-238

 Filed: 21 March 2017

Cabarrus County, No. 12 CRS 051930

STATE OF NORTH CAROLINA,

 v.

DEVRIE LERAN BURRIS, Defendant.

 Appeal by defendant from judgment entered on or about 7 October 2015 by

Judge Martin B. McGee in Superior Court, Cabarrus County. Heard in the Court of

Appeals 22 August 2016.

 Attorney General Joshua H. Stein, by Assistant Attorney General Kathryne E.
 Hathcock, for the State.

 Andrew Yu for defendant-appellant.

 STROUD, Judge.

 Defendant Devrie Leran Burris (“defendant”) appeals from the trial court’s

judgment finding him guilty of impaired driving. On appeal, defendant raises several

issues, including that the trial court erred in denying his motion to suppress self-

incriminating statements made after his driver’s license was retained and without

Miranda warnings. Because we find that defendant was not free to leave at the time

his license was retained, we agree and remand to the trial court for a new trial.

 Facts
 STATE V. BURRIS

 Opinion of the Court

 On 13 April 2012, Christopher Hill of the Kannapolis Police Department

(“Detective Hill”) responded to a suspicious person call at a Fairfield Inn in Cabarrus

County. After pulling in to the hotel parking lot, Detective Hill observed a red Ford

Explorer “parked in front of the hotel kind of in the unloading area under the

overhang.” A woman was standing outside of the Explorer and defendant was sitting

in the driver’s seat. Detective Hill spoke to the woman standing outside of the car

and to defendant through the passenger side window, which was rolled down. The

vehicle’s engine was not running.

 Detective Hill asked “what they were doing there” and “for their

identifications.” Defendant and the woman responded that they were trying to get a

room, and defendant got out of the driver’s seat to walk around the car to Detective

Hill to hand him his identification. Detective Hill noticed a “strong odor of alcohol

beverage” from defendant when he handed over his driver’s license. He told

defendant and the woman to “hang tight there in the parking lot area” while he went

inside to talk to the hotel clerk. He learned that the clerk had called because of a

concern that the actions of defendant and the woman were similar to “a robbery that

happened in a neighboring hotel a night or two before.” 1

 1 Detective Hill did not say what the clerk told him, if anything, regarding the specifics of any
“actions” of defendant or the woman which aroused his suspicions of a potential robbery. As relevant
to the issues in this case, there is no evidence that the hotel clerk reported anything about when the
Explorer arrived at the hotel or who had been driving it.

 -2-
 STATE V. BURRIS

 Opinion of the Court

 Based on his conversation with the hotel clerk, Detective Hill went back

outside to ask defendant if he was the one driving the vehicle, to which he responded

“yes.” He then began asking defendant questions about where he was traveling and

the route he had taken to the hotel. At some point, Detective Hill checked the

registration on the vehicle and determined that it was registered in defendant’s

name. Detective Hill asked defendant whether he had anything to drink that night,

and defendant responded that he had “a couple drinks.” Defendant told Detective

Hill that he had not had anything to drink since arriving at the hotel. Detective Hill

did not observe any open or unopened containers in or around the red Ford Explorer.

 Detective Hill asked defendant “to submit to field sobriety testing,” and

performed those tests in the parking lot. Defendant “showed some signs of

impairment on them.” Detective Hill then asked defendant to submit to a portable

breath sample test, and he obliged, resulting in a reading of .10. At that point,

Detective Hill placed defendant under arrest for driving while impaired and

transported him to the Kannapolis Police Department.

 After arriving at the police station, Detective Hill attempted to perform a

breath test on defendant, but he refused. Since defendant refused a breath test,

Detective Hill took defendant to the hospital to request a blood draw for analysis.

Detective Hill did not seek a warrant for the blood draw. After arriving at the

hospital, Detective Hill informed defendant of his implied consent rights. Defendant

 -3-
 STATE V. BURRIS

 Opinion of the Court

exercised his right to contact a witness, but 30 minutes later, the witness still had

not arrived. After defendant refused to submit to a blood draw, Detective Hill

directed a nurse to draw blood samples from defendant’s arm. After the blood draw,

Detective Hill transported defendant to the magistrate’s office, where he was

processed and placed in jail.

 Defendant was charged with impaired driving. He was convicted and

sentenced in district court on 15 April 2014. Defendant appealed to the superior

court. Defendant filed a motion to dismiss on 23 July 2015, and in the motion asked

for suppression of

 any statements made by Defendant as the officer engaged
 in a custodial interrogation of the Defendant without
 advising the Defendant of his right to refrain from
 answering any questions or advising the Defendant of his
 constitutional right to counsel during questioning or any
 other federal, state or statutory rights of an accused in
 police custody regarding the effect of any statement on
 future proceedings.

On 17 August 2015, a hearing was held on defendant’s motion and the trial court

orally denied the motion to suppress statements in open court.

 Following the 17 August 2015 hearing, the trial court entered an order and a

subsequent amended order denying defendant’s motion. In the amended order, the

court concluded in relevant part:

 2. Miranda warnings and a waiver of those rights
 apply only before officers begin a custodial
 interrogation Miranda v. Arizona, 384 U.S. 436.

 -4-
 STATE V. BURRIS

 Opinion of the Court

 Without facts showing both “custody” and
 “interrogation,” the Miranda rule is inapplicable.

 3. The U.S. Supreme Court has ruled that a person is
 in custody under the Miranda rule when officer [sic]
 have formally arrested the person or have restrained
 a person’s movement to a degree associated with a
 formal arrest. Berkemer v. McCarty, 468 U.S. 420.

 4. The North Carolina Supreme Court has made clear
 that it follows the U.S. Supreme Court on the
 meaning of custody. State v. Buchanan, 353 [N.C.]
 332.

 5. In the present case, the Defendant falls short of the
 test for custody, therefore the statements made
 before arrest should not be suppressed.

 6. Under the totality of the above-referenced
 circumstances, the Defendant’s Motion to Suppress
 should be denied.

An additional order denying defendant’s motion to suppress was entered regarding

the warrantless blood draw, finding “exigent circumstances to support a warrantless

blood draw.” A jury trial was held from 5 October to 7 October 2015, with the jury

finding defendant guilty of driving while impaired. Defendant timely appealed to

this Court.

 Discussion

 On appeal, defendant argues (1) that his motion to suppress self-incriminating

statements should have been granted because he was seized and in custody at the

time the statements were made yet he received no Miranda warnings; (2) that his

 -5-
 STATE V. BURRIS

 Opinion of the Court

motion to suppress the blood draw should have been granted because the warrantless

blood draw was completed outside of any exigent circumstances; and (3) that the trial

court erred in denying his motion to dismiss the charges because there was

insufficient evidence to support a conviction.

 I. Motion to Suppress Self-Incriminating Statements

 Defendant first argues on appeal that the trial court erred in denying his

motion to suppress self-incriminating statements made without Miranda warnings.

Specifically, defendant argues that he was seized and in custody when Detective Hill

engaged in a “custodial interrogation” and that he was “entitled to Miranda warnings

before [Detective] Hill’s ensuing questions.” We agree.

 The standard of review in evaluating the denial of a
 motion to suppress is whether competent evidence
 supports the trial court’s findings of fact and whether the
 findings of fact support the conclusions of law. However,
 when . . . the trial court’s findings of fact are not challenged
 on appeal, they are deemed to be supported by competent
 evidence and are binding on appeal. Conclusions of law are
 reviewed de novo and are subject to full review. Under a
 de novo review, the court considers the matter anew and
 freely substitutes its own judgment for that of the lower
 tribunal.

State v. Biber, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citations and

quotation marks omitted).

 Defendant does not frame his argument as a challenge to any particular

findings of fact but rather simply argues that he should have received Miranda

 -6-
 STATE V. BURRIS

 Opinion of the Court

warnings after his license was retained and before Detective Hill asked questions,

because he was seized and under custodial interrogation at that time. Defendant’s

argument does, however, direct us to a portion of the findings of fact as unsupported

by the evidence, so we will briefly address those relevant findings.

 The trial court found in part that:

 4. Detective Hill asked the Defendant and the female
 for identification. The Defendant got out of the
 vehicle and gave identification to Detective Hill.

 5. During this interaction, Detective Hill noticed that
 the Defendant had a strong odor of alcohol about his
 person and the Defendant admitted to driving.

 6. Detective Hill directed both subjects to remain
 where they were while he went into the hotel to
 speak with the desk clerk. Detective Hill could not
 specifically recall, but believes he retained
 possession of the Defendant’s identification (driver’s
 license) when he left to enter the hotel.

(Emphasis added). Although the timing of events is not entirely clear from the

wording of Finding No. 5, it could be understood to mean that defendant admitted to

driving the vehicle before Detective Hill went inside the hotel to speak to the clerk.

If that was the intended meaning -- and it may not have been -- it is not supported by

the evidence. Detective Hill’s testimony at the suppression hearing sets forth the

correct order of events. At the hearing, Detective Hill testified on direct examination

by the State:

 Q And what did you observe once you arrived on

 -7-
 STATE V. BURRIS

 Opinion of the Court

the scene?

 A. When I pulled into the parking lot, I observed
a red Ford Explorer. . . .

 Q What did you do at that point?

 A At that point I exited my patrol vehicle. I
walked over to where the female was standing. I made
contact with her, and the window was down in the
passenger side so I was speaking to both her and the male
and just asked what they were doing there and asked for
their identifications.

 Q What was the nature of the conversation with
the defendant?

 A At that point it was just when I asked what
they were doing there, they said they were trying to get a
room.

 Q And what happened next?

 A When I asked for the identifications . . .
[defendant] got out of the driver seat of the vehicle and
walked around to me and handed me his identification as
well.

 ....

 Q Did you make any observations about him at
that time?

 A At that time when he walked around to me
and while we were just engaging in some short
conversation, I detected a strong odor of alcoholic beverage
coming from him.

 ....

 -8-
 STATE V. BURRIS

 Opinion of the Court

 Q What did you do at that point?

 A At that point I just asked him to kind of hang
 tight there in the parking lot area while I went inside to
 speak with the hotel clerk. I went inside, spoke with her.

 Q And what did you do based on that
 conversation?

 A Based on that conversation, I went back
 outside to speak to [defendant] and I asked him if he was
 the one who was driving the vehicle, and he responded to
 me yes.

(Emphasis added). Detective Hill testified that it was not until after he went inside

to speak to the hotel clerk and came back out that he asked defendant whether he

had been driving. There is no evidence of any other order of events. Accordingly, we

conclude that to the extent that Finding No. 5 could be understood as finding that

Detective Hill asked defendant about driving before he took his driver’s license and

told him to “hang tight,” the trial court’s finding is not supported by competent

evidence.

 The crux of defendant’s argument on appeal deals with the trial court’s

conclusion that defendant “falls short of the test for custody[.]” In Miranda v.

Arizona, the United States Supreme Court held that statements stemming from a

custodial interrogation of the defendant may not be used unless the prosecution

“demonstrates the use of procedural safeguards effective to secure the privilege

against self-incrimination.” 384 U.S. 436, 444, 16 L. Ed 2d 694, 706, 86 S. Ct. 1602,

 -9-
 STATE V. BURRIS

 Opinion of the Court

1612 (1966). Our Supreme Court has since clarified that “[t]he rule of Miranda

requiring that suspects be informed of their constitutional rights before being

questioned by police only applies to custodial interrogation.” State v. Brooks, 337

N.C. 132, 143, 446 S.E.2d 579, 586 (1994).

 As this Court has previously noted in other Fourth Amendment cases:

 The seizure of an individual can take place through
 the application of physical force or without the officer ever
 laying his hands on the person seized. An individual is
 seized by an officer and falls within the protection of the
 Fourth Amendment when officer conduct would have
 communicated to a reasonable person that he was not at
 liberty to ignore the police presence and go about his
 business. In determining whether a reasonable person
 would feel free to decline an officer’s request to
 communicate, a reviewing court must examine the totality
 of the circumstances. This test focuses on the coercive
 effect of police conduct, taken as a whole.

State v. Marrero, __ N.C. App. __, __, 789 S.E.2d 560, 564 (2016) (citations and

quotation marks omitted). “[O]ur Supreme Court has held the definitive inquiry in

determining whether an individual is in custody for purposes of Miranda is, based on

the totality of the circumstances, whether there was a formal arrest or restraint on

freedom of movement of the degree associated with a formal arrest.” State v. Portillo,

__ N.C. App. __, __, 787 S.E.2d 822, 828 (2016) (citation, quotation marks, and

brackets omitted).

 In this case, Detective Hill asked for defendant’s driver’s license, retained it,

and told defendant to “hang tight there in the parking lot area while [he] went inside

 - 10 -
 STATE V. BURRIS

 Opinion of the Court

to speak with the hotel clerk.” According to Detective Hill’s own testimony at the

suppression hearing, as well as the trial court’s findings of fact in this regard,

defendant was not free to leave. He did not return the driver’s license to defendant

before beginning to question him. A reasonable person would not feel free to leave

when he is in a hotel parking lot in his car but a police officer has taken his driver’s

license -- so he could not legally drive away -- and directed him not to leave. See, e.g.,

State v. Jackson, 199 N.C. App. 236, 243, 681 S.E.2d 492, 497 (2009) (“As a reasonable

person under the circumstances would certainly not believe he was free to leave

without his driver’s license and registration, [the officer’s] continued detention and

questioning of [the driver] after determining that [the driver] had a valid driver’s

license was not a consensual encounter. Accordingly, the extended detention of

Defendant was unconstitutional and [the driver’s] eventual consent to search the

vehicle was tainted by the illegality of the extended detention, thus rendering [the

driver’s] consent ineffective to justify the search.”). Since defendant was not free to

leave when he was questioned, it was a custodial interrogation and thus Detective

Hill should have read defendant his Miranda rights before engaging in the

questioning.

 Furthermore, the only evidence of defendant’s operation of a motor vehicle was

defendant’s admission, which we have concluded should have been suppressed. This

Court has previously found that “one ‘drives’ within the meaning of [N.C. Gen. Stat.

 - 11 -
 STATE V. BURRIS

 Opinion of the Court

§ 20-138.1] if he is in actual physical control of a vehicle which is in motion or which

has the engine running.” State v. Fields, 77 N.C. App. 404, 406, 335 S.E.2d 69, 70

(1985). Although defendant was sitting in the driver’s seat of the car in the hotel

parking lot, Detective Hill testified that the vehicle’s engine was not running at the

time he approached the vehicle. There was no circumstantial evidence that defendant

had recently driven the Explorer to the spot where Detective Hill found him. Many

cases have recognized that circumstantial evidence can support an inference that the

defendant had been driving a particular vehicle. For example, in State v. Foreman,

133 N.C. App. 292, 298, 515 S.E.2d 488, 493 (1999), aff’d as modified, 351 N.C. 627,

527 S.E.2d 921 (2000), the officer observed the vehicle on public roads and in a

residential driveway, and after pulling in behind the vehicle and shining its lights,

the officer saw the defendant “sitting in the driver’s seat and the keys to the vehicle

were in the ignition.” In State v. Crawford, 125 N.C. App. 279, 282, 480 S.E.2d 422,

424 (1997), this Court found probable cause to arrest the defendant where

 the deputy found defendant alone in a car parked on the
 shoulder of a rural side road. Defendant was in the driver’s
 seat in a semiconscious state, his pants were undone, and
 he had been drooling. Defendant had a strong odor of
 alcohol about him, had difficulty speaking, and admitted to
 the deputy he had been drinking . . . On a night when the
 temperature was 26 degrees, the hood felt warm,
 indicating the car had been recently driven. There were no
 other passengers in the car . . . . Defendant had possession
 and control of the ignition key.

 - 12 -
 STATE V. BURRIS

 Opinion of the Court

In State v. Mack, 81 N.C. App. 578, 583, 345 S.E.2d 223, 226 (1986), this Court found

sufficient circumstantial evidence for the jury to infer that the defendant drove on a

public street where the officer observed “the headlights of the car on, the key in the

ignition, the warm hood, [and] the defendant asleep in the driver’s seat[.]”

 Here, the only evidence prior to defendant’s admission was that Detective Hill

observed defendant sitting in the driver’s seat. There was no other evidence of when

the Explorer had arrived at the hotel parking lot. The engine was not running and

the car was parked at the time Detective Hill arrived. There was no evidence that

the car’s lights were on or that the engine was warm and no evidence regarding who

had the keys to the car or where they were. The woman who was with defendant

could possibly have driven to the hotel. Without his admission that he had driven to

the hotel, there was no evidence that defendant had driven the Explorer at any

relevant time. Thus, defendant “has established he was prejudiced by the trial court’s

error in refusing to exclude his statement.” State v. Crook, __ N.C. App. __, __, 785

S.E.2d 771, 778 (2016). Accordingly, we hold that the trial court erred when it denied

defendant’s motion to suppress his statements.

 II. Motion to Suppress Blood Test Evidence

 Next, defendant argues that the trial court erred in denying his motion to

suppress the blood test evidence because Detective Hill obtained a warrantless blood

draw outside of exigent circumstances.

 - 13 -
 STATE V. BURRIS

 Opinion of the Court

 The United States Supreme Court held in Schmerber v. California, 384 U.S.

757, 768, 16 L. Ed. 2d 908, 918, 86 S. Ct. 1826, 1834 (1966) that the Fourth

Amendment prohibits the warrantless seizure of a blood sample where such intrusion

is “not justified in the circumstances” or is made in an “improper manner.” More

recently, in Missouri v. McNeely, __ U.S. __, __ 185 L. Ed. 2d 696, 715, 133 S. Ct. 1552,

1568 (2013), the Supreme Court held, in the context of a blood draw performed over

a defendant’s objection in impaired driving cases, that the dissipation of alcohol in a

person’s blood stream standing alone “does not constitute an exigency in every case

sufficient to justify conducting a blood test without a warrant.”

 This Court addressed McNeely in State v. Dahlquist, 231 N.C. App. 100, 103,

752 S.E.2d 665, 667 (2013), appeal dismissed and disc. review denied, 367 N.C. 331,

755 S.E.2d 614 (2014), noting that “after the Supreme Court’s decision in McNeely,

the question for this Court remains whether, considering the totality of the

circumstances, the facts of this case gave rise to an exigency sufficient to justify a

warrantless search.” In Dahlquist, the trial court found that: (1) the defendant pulled

up to a checkpoint and an officer noticed an odor of alcohol; (2) the defendant admitted

to drinking five beers; (3) field sobriety tests indicated that the defendant was

impaired; and (4) the officer went to the hospital directly because he knew that it was

10 to 15 minutes away and typically not too busy on Saturday mornings, but that on

a weekend night “it would take between four and five hours to obtain a blood sample

 - 14 -
 STATE V. BURRIS

 Opinion of the Court

if he first had to travel to the Intake Center at the jail to obtain a warrant.” Id. at

103, 752 S.E.2d at 665. This Court evaluated the totality of the circumstances and

held that “the facts of this case gave rise to an exigency sufficient to justify a

warrantless search.” Id. at 104, 752 S.E.2d at 668. See also State v. Romano, __ N.C.

App. __, __, 785 S.E.2d 168, 174, disc. review allowed, __ N.C. __, 794 S.E.2d 315

(2016) (“Under the totality of the circumstances, considering the alleged exigencies of

the situation, the warrantless blood draw was not objectively reasonable.”).

 Although we normally would have to review the totality of the circumstances

in the present case to determine whether the warrantless blood draw was objectively

reasonable, we need not address the issue further in this particular case, because the

warrantless blood draw here is inadmissible as fruit of the poisonous tree.

 The fruit of the poisonous tree doctrine, a specific
 application of the exclusionary rule, provides that when
 evidence is obtained as the result of illegal police conduct,
 not only should that evidence be suppressed, but all
 evidence that is the fruit of that unlawful conduct should
 be suppressed. Only evidence discovered as a result of
 unconstitutional conduct constitutes fruit of the poisonous
 tree. This limitation on the fruit of the poisonous tree
 doctrine is known as the independent source rule, which
 applies when a later, lawful seizure is genuinely
 independent of an earlier, tainted one. Under such
 circumstances, the independent source rule provides that
 evidence obtained illegally should not be suppressed if it is
 later acquired pursuant to a constitutionally valid search
 or seizure.

 - 15 -
 STATE V. BURRIS

 Opinion of the Court

State v. McKinney, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006) (citations, quotation

marks, and brackets omitted).

 Here, Detective Hill noticed the smell of alcohol on defendant’s breath before

he took his license and directed defendant to remain where he was, but he did not yet

have any evidence to indicate probable cause to believe that defendant had driven

while impaired. It was only after defendant’s statement admitting that he had driven

the vehicle that Detective Hill had defendant complete the roadside tests and later

executed the warrantless blood draw. No evidence presented to the trial court

indicates a constitutional independent source for the warrantless blood draw.

Accordingly, we conclude that evidence of the blood test result was fruit of the

poisonous tree and should have been be excluded.

 III. Motion to Dismiss

 Finally, defendant argues that the trial court erred in denying his motion to

dismiss the impaired driving charge at the close of the State’s evidence and at the

close of all evidence because the State failed to present substantial independent

circumstantial or direct evidence -- other than defendant’s statement -- to establish

that defendant was operating a motor vehicle at any relevant time. Since we remand

this case for a new trial based on the suppression issues, we need not address this

remaining issue further on appeal.

 Conclusion

 - 16 -
 STATE V. BURRIS

 Opinion of the Court

 Accordingly, we hold that the trial court erred by denying defendant’s motions

to suppress his statement and the results of the warrantless blood test. We reverse

and remand for a new trial consistent with this opinion.

 REVERSED AND REMANDED FOR NEW TRIAL.

 Chief Judge McGEE and Judge INMAN concur.

 - 17 -